## The Mitral Corporation v. Vermont Knives, Inc.

[566 A.2d 406]

No. 87-323

Present: **Allen, C.J., Peck and Dooley, JJ., and Barney, C.J. (Ret.), Specially Assigned**

Opinion Filed August 4, 1989

*Brian P. Dempsey* of *Miller Cleary & Faignant,* Rutland, for Plaintiff-Appellee.

*Biederman & Rakow, P.C.,* Rutland, for Defendant-Appellant.

**Allen, C.J.** Plaintiff, producer of knife blade-blanks, sued defendant, manufacturer of boot knives, for breach of a sales contract. Judgment was entered for plaintiff in the amount of $31,788.50 and defendant now appeals. We reverse the damage award in part.

In November, 1985, the defendant asked plaintiff for a price quote on a specific blade-blank. In response to defendant's request, the plaintiff quoted prices of 5,000 blanks at $3,380 per thousand; 10,000 blanks at $2,555 per thousand and 20,000 blanks at $2,400 per thousand to be manufactured from type 440 stainless steel. The defendant issued a purchase order for up to 7,000 blade-blanks. Upon receipt of the order a representative of the plaintiff informed the defendant that plaintiff was bound to accept an entire coil of steel from its supplier and that it would ship what that coil produced, which would be approximately 7,800 blade-blanks. The defendant agreed to accept 7,800.

The first shipment contained 5,565 blade-blanks and was accepted. The second shipment contained 5,420 blade-blanks for a total of 10,985. Both were made from type 425 steel, not the type 440 steel specified in the quote. When the second shipment was received at the warehouse of the shipper, the defendant refused to accept delivery or pay the C.O.D. charges. Thereafter, Connecticut counsel for the plaintiff wrote to the defendant and stated that he understood there was a dispute as to the quantity of blade-blanks and suggested that the defendant accept the shipment because storage fees were mounting and his client couldn't use the blades if they were returned. The acceptance was coupled with the statement that the plaintiff "would make an adjustment on the sale price for your company." The blade-blanks were then delivered to the defendant.

At trial the plaintiff contended that the defendant was obligated to pay for the entire shipment. The plaintiff advanced two theories for computing the amount due. First,

it contended that it was entitled to receive payment for the 7,800 blade-blanks at the 5,000 quantity price and payment for the remaining blanks at its cost of production which was $1.70 per blank. Alternatively, the plaintiff sought judgment for all of the blade-blanks at the 10,000 price.

The defendant contended that it was not obligated to pay for any blade-blanks in excess of the purchase order quantity of 7,000 and that it was entitled to a reduction in price because the quantity ordered was between the 5,000 quantity price and the 10,000 quantity price, and because it had incurred expenses advertising that its blade would be manufactured from type 440 stainless steel when, in fact, plaintiff shipped blanks made of type 425 stainless steel.

The trial court found that the defendant had agreed to accept 7,800 blade-blanks and agreed to accept their manufacture from a different type of steel from that originally ordered. It further found that the difference in type of steel did not affect the quality of the blade-blank nor its price and that the defendant did not at first accept the second shipment maintaining that it did not order or need so many blade-blanks. The court further found that after some negotiations, defendant did accept the second shipment of blade-blanks, "there being an agreement that plaintiff would adjust the price of the second shipment." It further found that there was no subsequent agreement reached between the parties on the price of the second shipment.

On appeal, the defendant contends that the trial court erred in (1) finding that the defendant accepted the entire shipment of blade-blanks, (2) failing to find that the defendant was entitled to a price adjustment because of a change between the steel ordered and the steel shipped, (3) finding there was an "agreement to agree" with respect to price for the additional quantity; and in (4) computing the damages for the blade-blanks in excess of 7,800.

■ The defendant concedes on appeal that it agreed to purchase 7,800 blade-blanks. The question before us is whether it accepted the blade-blanks in excess of this number. We note at the outset that the plaintiff was obligated to deliver, and defendant to accept, the quantity of blade-blanks to which the parties agreed. 9A V.S.A. § 2-301. Delivery of

too many blanks would not conform to the contract. The defendant, upon tender of the second shipment, could have rejected them, accepted them, or accepted the quantity stipulated for in the contract and rejected the remainder. 9A V.S.A. § 2-601. The trial court concluded that the defendant initially rejected the second shipment, but that its subsequent action in picking up the blade-blanks constituted the acceptance. With this we cannot agree. The excess blade-blanks had been rightfully rejected by the defendant,[1] and it then became defendant's duty to follow the plaintiff's instructions with respect to them. 9A V.S.A. § 2-603.[2] The only evidence regarding instructions is contained in the letter from plaintiff's counsel which, reasonably interpreted, told the defendant to pick up the blade-blanks in order to avoid further storage charges. A merchant buyer's retention and storage of rightfully rejected goods (goods in excess of those contracted for), at the instruction of the seller, does not violate the buyer's duty to follow reasonable instructions of the seller under 9A V.S.A. § 2-603(1). *Wiencken v. Mill-Rite Sash & Door Co.*, 3 U.C.C. Rep. Serv. 2d 1337, 1343 (Bankr. D. Ore. 1987).

■ There have been no further negotiations with respect to the price for the excess, notwithstanding repeated efforts by

---

[1] "Rejection of goods must be within a reasonable time after their delivery or tender" and "is ineffective unless the buyer seasonably notifies the seller." 9A V.S.A. § 2-602(1). Here, S. Ray Thornton, Vice President of the defendant company, testified that he called Robert Fritch, Executive Vice President of the plaintiff company, on the day of the second delivery and notified him that the defendant was rejecting the shipment. The defendant both rejected the shipment within a reasonable time and gave prompt notice to the plaintiff.

[2] Under § 2-603, the buyer has an obligation to follow the seller's instructions when: (1) the seller has no agent or place of business at the market of rejection; (2) the buyer is a merchant; and (3) the buyer has possession or control of the goods. See J. White & R. Summers, Uniform Commercial Code § 8.3, at 316 (2d ed. 1980). All three conditions exist in the present case. The defendant, a "merchant" buyer within the meaning of 9A V.S.A. § 2-104(1), had control over the excess blade-blanks. Moreover, plaintiff is a Connecticut corporation with a place of business in Harwinton, Connecticut, and there is no indication from the record that plaintiff has an agent or other place of business in Vermont. See 3 R. Duesenberg & L. King, Sales and Bulk Transfers § 14.02(1), at 14-11 (1985) ("If it is a remote seller, with no agent or other place of business where the buyer is located, which would usually be where the goods are rejected, then this is the type of case where reasonable instructions should be forthcoming from the seller.").

the plaintiff to initiate such negotiations. Defendant's refusal to negotiate, however, cannot be tortured into an acceptance. The record does not support the finding that after negotiations the defendant accepted the second shipment, nor does the plaintiff argue an express acceptance in this Court. Instead, it contends that the retention of the blade-blanks by the defendant constitutes the acceptance. While it is true that an acceptance occurs when the buyer does any act inconsistent with the seller's ownership, 9A V.S.A. § 2-606(1)(c), there is nothing in the record before us to indicate any such act.[3] While possession for an inordinate amount of time may be inconsistent with the seller's ownership, *Hislop v. Duff*, 146 Vt. 310, 313, 502 A.2d 357, 359 (1985), the possessory act here was pursuant to the seller's request after an effective and timely rejection. The trial court erred in concluding that the defendant accepted the 3,185 blade-blanks in excess of the number ordered.

The defendant next argues that the trial court erred in failing to adjust the purchase price because of the substitution of the type 425 stainless steel for the type 440 ordered. It maintains that it was entitled to recover expenses incurred in advertising that its knives would be made from the type 440 steel. While there was evidence from the defendant that it expected some reduction in price, there was also evidence from the plaintiff that the change in type was made to accommodate the defendant's production schedule and that there would be no change in the quoted price for the blade-blanks as a result of the change in steel. The defendant contends that since the parties agreed to the change in type, the trial court was also bound to consider whether the price term was subject to modification. On the evidence presented, however, the court was free to conclude that the parties had agreed to a change in the type of the steel without a modification in the price.

In view of our disposition of the defendant's first two arguments, it is unnecessary to reach the remainder.

---

[3] Plaintiff claims in its brief that the defendant is utilizing blades in its manufacturing process and infers that they are using blades in excess of the 7,800 number. Defendant maintained that it still had 8,000 blades at the time of hearing. There was no finding by the trial court on this question.

Inasmuch as the correct amount of the judgment can be ascertained by computation, we will make the correction here and enter judgment in that amount.

*Judgment for the plaintiff in the amount of twenty-six thousand three hundred and sixty-four dollars (7,800 blade-blanks × $3,380 per thousand = $26,364) plus interest thereon at the legal rate from August 1, 1986 until paid, together with its costs.*